IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETHANY C.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY, | : | NO.  22-4262 |
| Commissioner of Social Security[2] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                      July 11, 2024

Plaintiff seeks review of the Commissioner's decision denying her application for supplemental security income ("SSI").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence.  Therefore, I remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on December 16, 2019, alleging disability beginning on December 28, 2018, as a result of post-traumatic stress disorder

---

[1]Consistent with the practice of this court, to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner O'Malley should be substituted for Kilolo Kijakazi as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

("PTSD") and depression.  Tr. at 110, 236, 259.  Her application was denied initially and

on reconsideration.  Id. at 134-38, 151-54.  At her request, id. at 155, an administrative

hearing was held before an ALJ on September 14, 2021.  Id. at 39-94.  On December 9,

2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  Id.

at 16-34.  The Appeals Council denied Plaintiff's request for review on September 2,

2022, id. at 1-3, making the ALJ's December 9, 2021 decision the final decision of the

Commissioner.  20 C.F.R. § 416.1481.

Plaintiff commenced this action in federal court on October 25, 2022.  Doc. 1.

The matter is now fully briefed and ripe for review.  Docs. 8, 11-12.[3]

## II.   <u>LEGAL STANDARD</u>

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusions that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v.

Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)).  The court has plenary review of legal

issues.  Schaudeck, 181 F.3d at 431.

---

[3]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to
Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 6.

2

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.      Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.      If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;
>
> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007); see also Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (substantial

evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

## III.   DISCUSSION

### A.   ALJ's Findings and Plaintiff's Claims

In the December 9, 2021 decision under review, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since applying for SSI on December 16, 2019.  Tr. at 18.  At step two, the ALJ found that Plaintiff suffers from the severe impairments of disorders of the spine, PTSD, affective disorder, and anxiety disorder/panic disorder.  Id.  The ALJ found Plaintiff's diabetes mellitus, asthma, and obesity to be non-severe.  Id. at 19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  Id.

The ALJ determined that Plaintiff retains the RFC to perform light work except she can occasionally lift 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; can perform occasional postural maneuvers with occasional climbing of ladders, ropes, and scaffolds; must avoid concentrated exposure to hazardous machinery and unprotected heights; can tolerate no more than occasional exposure to pulmonary irritants; can understand, carry out, and remember simple and detailed but uninvolved instructions in 2-hour increments; no fast-paced or production-pace work; only occasional interaction with supervisors and coworkers; no tandem job assignments; no

more than incidental and superficial interaction with the general public; limited to stable and routine environment with infrequent workplace changes.  Tr. at 22.  Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff is unable to perform her past relevant work, but can perform other jobs that exist in significant numbers in the national economy.  Id. at 30-31.  As a result, the ALJ concluded that Plaintiff is not disabled.  Id. at 33.

Plaintiff argues that the ALJ erred by limiting cross-examination of the VE and selectively relying on parts of the medical record.  Doc. 8 at 4-14; Doc. 12 at 1-5.  In addition, Plaintiff argues that the ALJ and Appeals Council judges were not properly appointed.  Doc. 8 at 15-16.  Defendant responds that Plaintiff was afforded a full and fair hearing, the ALJ properly considered the evidence, and her decision is supported by substantial evidence.  Doc. 11 at 5-16.  Defendant also contends that there is no merit to Plaintiff constitutional challenge to the appointment of the ALJ and Appeals Council judges.  Id. at 16-27.

### B.    Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on May 10, 1975, and thus was 44 years old when she applied for benefits (December 16, 2019), and 46 at the time of the ALJ's decision (December 9, 2021).  Tr. at 236.  She is about five feet tall and weighs approximately 160 pounds.  Id. at 259; see also id. at 49 (testimony that she is five feet one or two and weighed 167 pounds the prior week).  Plaintiff came to the United States from Cambodia as a refugee at the age of 16.  Id. at 426.  Plaintiff completed twelfth grade and has past relevant work

owning and operating a coffee shop and working in a packing company.  <u>Id.</u> at 51-53.[4]

Plaintiff has four children, and the two teenagers live at home with Plaintiff and her

husband.  <u>Id.</u> at 49-50.  She also has a case manager who helps her with "bills and stuff."

<u>Id.</u> at 69.

At the administrative hearing, Plaintiff testified that she cannot work because she

feels "stressed."  <u>Tr.</u> at 54.  Plaintiff described feeling sad and having daily crying spells

triggered by past memories.  <u>Id.</u> at 62-64.  She has trouble sleeping and recurring

nightmares.  <u>Id.</u> at 65, 69-70. She also feels tired, has suicidal thoughts, and has trouble

concentrating and forgets things.  <u>Id.</u> at 65-66.  Plaintiff described anxiety attacks where

her heart races.  <u>Id.</u> at 67.  According to Plaintiff, her children do the chores around the

house.  <u>Id.</u> at 53-54.  She testified that she can walk for "a couple minutes," but when she

walks she feels dizzy.  <u>Id.</u> at 56.  She can sit for an hour and can stand in line for "a

couple of minutes."  <u>Id.</u>  She can lift one or two gallons of milk or water.  <u>Id.</u>

At the hearing, a VE classified Plaintiff's job as a coffee shop manager as a skilled

position that is normally categorized as light work, but medium as she described it, and

the packager job is medium, unskilled work.  <u>Tr.</u> at 75.  Based on the hypothetical posed

by the ALJ with the limitations included in the ALJ's RFC assessment, <u>see</u> <u>supra</u> at 4-5,

the VE testified that such an individual would not be able to perform Plaintiff's past

---

[4]It is unclear if Plaintiff graduated high school.  At the administrative hearing and in completing the Disability Report, Plaintiff stated that she completed the twelfth grade and was not in special education classes.  <u>Tr.</u> at 51, 260.  However, she reported to consultative examiner Gregory Kramer, Ph.D., that she stopped going to high school in the twelfth grade and was in special education for English as a second language.  <u>Id.</u> at 426.

relevant work, but could perform other work and provided three examples – price marker, office helper, and sorter.  Id. at 77.[5]

Plaintiff's counsel then sought clarification about the VE's understanding of several aspects of the ALJ's hypothetical including "simple and detailed, but not uninvolved work," and the ability to "stay on task in two[-hour] increments and complete an eight hour day."  Tr. at 79-80.  Counsel also asked the VE about the date the Dictionary of Occupational Titles ("DOT") was updated.  Id. at 82-83.  When counsel added the limitation that the hypothetical person could not remember any instructions given to them, the VE said such a person would not be able to work.  Id. at 84.[6]  When asked about the sources of her information, the VE cited the DOT and companion booklets, and stated that her testimony is consistent with the DOT and her 34 years of experience as a vocational counselor.  Id. at 92-93.

### C.   Medical Evidence Summary

There are no treatment records regarding Plaintiff's physical impairments in the record.  When Plaintiff was evaluated on July 28, 2020, by consultative examiner, David

---

[5]The ALJ's hypotheticals included medium, light, and sedentary work.  Tr. at 76-78.  The VE identified jobs at all three levels with the additional limitations noted in the ALJ's RFC assessment.  Id. at 76-78.

[6]Counsel also asked the ALJ whether someone "obviously off task during the work day and obviously not being productive" would be employable.  Tr. at 85.  When the ALJ asked counsel to quantify the percentage of time off task, counsel said, "intermittently throughout the day," but the ALJ asked counsel to be more specific.  Id.  When counsel asked the VE to assume someone "who is off task but they are equal to 66 percent of an eight hour day," the VE said that would preclude employment.  Id. at 87.

B. Klebanoff, M.D., the doctor noted that Plaintiff had complaints of lower back pain developing in the prior two years for which she was treated by her primary care physician.  Tr. at 408.[7]  Dr. Klebanoff noted that Plaintiff uses naproxen as needed and duloxetine daily.[8]  Id.  On examination, the doctor noted that Plaintiff had a positive straight-leg raising test in the supine position at 60 degrees.[9]  Id. at 411.  Plaintiff also had lower extremity weakness 4/5 due to back discomfort.  Id.  However, the doctor found Plaintiff's range of motion of all joints was within normal limits.  Id. at 419-20.  X-rays of Plaintiff's lumbar spine performed at the time of this evaluation revealed slight levoscoliosis (spinal curvature to the left).  Id. at 421.

Dr. Klebanoff opined that Plaintiff could continuously lift and carry up to 10 pounds, frequently lift and carry 11-20 pounds, occasionally lift and carry 21-50 pounds.  Tr. at 413.  The doctor found Plaintiff could sit for 8 hours, and stand and walk for 4 hours each in 1-hour intervals.  Id. at 414.

---

[7]There are no notes in the record from Plaintiff's primary care physician, identified as Dr. Nguyen at the administrative hearing.  See tr. at 45.

[8]Naproxen is a nonsteroidal anti-inflammatory drug.  See https://www.drugs.com/search.php?searchterm=naproxen (last visited June 28, 2024).  Duloxetine (brand name Cymbalta) is an antidepressant.  See https://www.drugs.com/duloxetine.html (last visited June 28 2024).

[9]The straight leg-raising test checks for impingement of the nerves in the lower back by determining whether there is pain when "the symptomatic leg is lifted with the knee fully extended; pain in the lower extremity between 30 and 90 degrees of elevation indicates lumbar radiculopathy, with the distribution of the path indicating the nerve root involved."  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), at 1900.

At the initial consideration level on August 5, 2020, Glenda Ann Cardillo, M.D., found from her review of the record that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for 6 hours, and sit for 6 hours in an 8-hour workday.  Tr. at 102.

On reconsideration on January 6, 2021, Kevin Scott Hollick, D.O., found from his review of the records that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, stand and/or walk for 6 hours, and sit for 6 hours in an 8-hour workday.  Tr. at 121.

With respect to mental health treatment, Plaintiff began treatment at Merakey on October 24, 2019.  Tr. at 445, 551.  At that time, Tushar Sarker, M.D., noted a history of major depressive disorder ("MDD") and possible PTSD, with Plaintiff complaining of feeling depressed, inability to sleep, feeling hopeless and lonely, with nightmares, flashbacks, occasional suicidal ideation, no energy, and getting forgetful and unable to focus.  Id. at 445, 450.  Plaintiff reported flashbacks and nightmares recalling the taking of her father and siblings during the Cambodian civil war.  Id. at 450.  On mental status exam ("MSE"), Plaintiff's mood was anxious, depressed, frustrated, helpless, and hopeless, and her affect was flat.  Id. at 449.  Her thought content was paranoid, and she had a mild limitation in concentration/attention.  Id.  Her immediate, recent, and remote memory were intact.  Id. at 450.  Dr. Sarker diagnosed MDD, recurrent, moderate, PTSD,

and panic disorder without agoraphobia and planned to start Plaintiff on Remeron.[10]  Id.

at 450-51.

On November 19, 2019, Plaintiff reported that Remeron did not help her

depression and continued complaints of depression, insomnia, and crying spells, with no

motivation or energy.  Tr. at 454.  Baogang Xue prescribed venlafaxine and Seroquel.[11]

Id. at 457.  On January 30, 2020, Beatrice Desir, D.O., noted Plaintiff's ongoing

depressive symptoms, with sleep disturbance, anxiety, daily flashbacks, and suicidal

ideation, including wanting to be hit by a car.  Id. at 459.  Dr. Desir increased Seroquel

and started Plaintiff on Cymbalta.  Id. at 461.

On February 27, 2020, Plaintiff reported feeling "the same," and Dr. Desir noted

Plaintiff's complaints of feeling fatigued with headaches and dizziness.  Tr. at 465.  Dr.

Desir increased Cymbalta, discontinued Seroquel, and added Prazosin.[12]  Id. at 467.  On

March 27, 2020, Dr. Desir noted continued sleep difficulties, nightmares, flashbacks and

fatigue, anxiety, and "up and down" mood.  Id. at 471. The doctor increased Cymbalta

and Prazosin.  Id. at 473.  On May 1, 2020, Plaintiff reported feeling "okay," with

occasional headaches and dizziness which Dr. Desir attributed to Prazosin.

---

[10]Remeron is an antidepressant.  See https://www.drugs.com/remeron.html (last visited June 28, 2024).

[11]Venlafaxine (brand name Effexor) is an antidepressant.  See https://www.drugs.com/venlafaxine.html (last visited June 28, 2024).  Seroquel is used with other medications to prevent episodes of depression in patients with bipolar disorder.  See https://www.drugs.com/seroquel.html (last visited June 28, 2024).

[12]Prazosin is used to treat hypertension.  See https://www.drugs.com/mtm/prazosin.html (last visited June 28, 2024).

Id. at 476.  The doctor discontinued Prazosin, increased Cymbalta, and added trazodone.[13]  Id. at 478.

On July 29, 2020, Dr. Desir noted Plaintiff reported feeling "okay," but that she still has anxiety and trouble falling asleep.  Tr. at 491.  The doctor increased Trazodone, and Plaintiff declined switching to Remeron.  Id. at 492.  On January 13, 2021, Plaintiff reported to Dr. Desir that her sleep and appetite are "okay," but she reported continued difficulty concentrating and having nightmares.  Id. at 516.  On April 13, 2021, Dr. Desir noted that there was some improvement in Plaintiff's sleep, but other symptoms were unchanged.  Id. at 527.  On July 7, 2021, Dr. Desir noted that Plaintiff "is still struggling with poor sleep," and added Remeron to Plaintiff's regimen.  Id. at 537-38.

Dr. Desir completed a Work Capacity Evaluation (Mental) on March 15, 2021, in which the doctor was asked to rate the degree of limitation resulting from psychological factors for different activities in four categories:  Understanding and Memory, Sustained Concentration Persistence and Pace; Social Interaction; and Adaptation.  Tr. at 441-42.[14]

---

[13]Trazodone is an antidepressant.  See https://www.drugs.com/trazodone.html (last visited June 28, 2024).

[14]The form contained a 5-point scale:  "Unlimited or Very Good," defined as "Absent or minimal limitations.  0% limitation;" "Limited But Satisfactory," meaning "Some mild limitation in this area, but generally functions pretty well.  1-33% limitation;" "Seriously Limited But Not Precluded," meaning "Serious limitations in this area.  The ability to function in this area is severely limited and less than satisfactory, but not precluded in all circumstances.  33-66% limitation;" "Unable to Meet Competitive Standards," meaning "Severe limitations in this area.  Unable to satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting.  67-99% limitation;" and "No Useful Ability to Function," meaning "An

In "Understanding and Memory," Dr. Desir found that Plaintiff's ability to ask simple questions was "unlimited," and her abilities to remember locations and work procedures, understand and remember very short and simple oral instructions and detailed instructions, and use judgment and make simple work-related decisions were "limited." Id. at 441.

In the area of Sustained Concentration, Persistence and Pace, the doctor found Plaintiff was "limited" in her abilities to carry out very short and simple instructions, sustain an ordinary routine without special supervision, ignore or avoid distractions while working, and work in coordination with others without being distracted by them. Tr. at 441. Plaintiff was "seriously limited" in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, and complete tasks in a timely manner. Id. In Social Interaction, the doctor found Plaintiff was "limited" in her ability to ask for help when needed, and "seriously limited" in her abilities to interact with the general public, accept instructions and respond to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. Id. at 442.

---

extreme limitation.  Unable to perform this activity in a regular work setting.  100% limitation." Tr. at 440.

Finally, in the area of Adaptation, the doctor found that Plaintiff's ability was "unlimited" with respect to being aware of normal hazards; "limited" in the abilities to travel to unfamiliar places or use public transportation, set realistic goals or make plans independently of others, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and distinguish between acceptable and unacceptable work performance; and "seriously limited" in the ability to respond appropriately to changes in the work setting. Tr. at 442. In addition, Dr. Desir indicated that Plaintiff's symptoms would frequently (34-66% of an 8-hour work day) interfere with attention and concentration needed to perform simple work tasks, and that she would be absent for more than 4 days per month due to her symptoms. Id. at 443.

Gregory Kramer, Ph.D., conducted a consultative Mental Status Evaluation on July 28, 2020, attended by Plaintiff and her behavioral health navigator. Tr. at 426.[15] On MSE, Dr. Kramer noted that Plaintiff's affect was flat, her mood was dysthymic, and her attention and concentration were impaired due to depression and/or learning difficulties. Id. at 428. The doctor also found that Plaintiff's recent and remote memory were impaired, and her insight and judgment were both poor. Id. at 429. Dr. Kramer completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which he was asked to rate Plaintiff's abilities on a 5-point scale. Id. at 431-

---

[15]It is unclear if the person who accompanied Plaintiff to the examination (Shannon Kilroy) is the case manager that Plaintiff discussed at the administrative hearing. Tr. at 68-69. Ms. Kilroy is a psychotherapist at Merakey. See id. at 562.

33.[16]  In the domain of understanding, remembering, and carrying out instructions, Dr.

Kramer found Plaintiff had "mild" limitation in the abilities to understand, remember,

and carry out simple instructions and make judgments on simple work-related decisions;

and "moderate" limitation in the abilities to understand, remember, and carry out

complex instructions and make judgments on complex work-related decisions.  Id.   In

the domain of interacting with others, the doctor found Plaintiff had "moderate"

limitation in the abilities to interact appropriately with supervisors and co-workers and

respond appropriately to usual work situations and changes in a routine work setting; and

"marked" limitation in the ability to interact with the public.  Id. 432.

At the initial consideration level on August 5, 2020, based on his review of the

record, Emanuel Arthur Schnepp, Ph.D., found that Plaintiff had mild limitation in the

ability to understand, remember, or apply information, and moderate limitation in the

abilities to interact with others, concentrate, persist or maintain pace, and adapt or

manage oneself.  Tr. at 100.  With respect to sustained concentration and persistence

capabilities, Dr. Schnepp found Plaintiff

> is able to carry out short and simple instructions.  She can
> make simple decisions.  [Plaintiff] can maintain an ordinary
> routine without special supervision.  Although somewhat
> limited in this regard by her [mental health] impairment, she
> is able to maintain concentration and attention for reasonably

---

[16]The form asked the doctor to rate the Plaintiff's ability to perform the activity
independently, appropriately, effectively and on a sustained basis.  Tr. at 431.  The 5-
point scale was:  "None" which meant the Plaintiff was "[a]ble to function;"  "Mild"
which meant functioning was "slightly limited;"  "Moderate" which meant that
functioning was "fair;" "Marked" which meant functioning was "seriously limited;" and
"Extreme" which meant Plaintiff was "[u]nable to function."  Id.

> extended periods of time and is capable of functioning within
> a schedule at a consistent pace when performing routine,
> unskilled tasks.  [Plaintiff] would be able to maintain regular
> attendance and be punctual within reasonable expectations
> when provided with a consistent schedule.

Id. at 106.  In addition, Dr. Schnepp found Plaintiff was moderately limited in her

abilities to interact with the general public and to accept instructions and respond

appropriately to criticism from supervisors, and not significantly limited in her ability to

get along with coworkers.  Id.

On reconsideration on December 11, 2020, Richard Fredric Small, Ph.D., agreed

with the limitations noted by Dr. Schnepp above.  Tr. at 118, 125-26.

**D.**   **Plaintiff's Claims**[17]

1.   ALJ's Selective Reliance on Parts of the Record Evidence

Plaintiff argues that the ALJ selectively relied on portions of the evidence while

ignoring others, and specifically challenges the ALJ's consideration of Dr. Kramer's

assessment and selective citation to parts of the mental health treatment record without

considering them in context.  Doc. 8 at 12-14; Doc. 12 at 4-5.  Defendant responds that

substantial evidence supports the ALJ's evaluation of the evidence.  Doc. 11 at 10-12.

The ALJ's consideration of medical opinion evidence is governed by regulations

which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.

---

[17]I have reordered Plaintiff's claims for ease of discussion.

20 C.F.R. § 416.920c(a).[18]  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. § 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. § 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . .  will be."  Id. § 416.920c(c)(1).  In addition, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. § 416.920c(c)(2).

The change in the regulations did not change the basic rule that "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not

---

[18]In contrast, the regulations governing applications filed prior to March 17, 2017, spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. § 416.927.

"reject evidence for no reason or the wrong reason."  Rutherford v. Barnhart, 399 F.3d

546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala,

994 F.2d 1058, 1066 (3d Cir. 1993)).

As previously discussed, Dr. Kramer found Plaintiff had a marked limitation in her

ability to interact with the public.  Tr. at 432.  The ALJ found Dr. Kramer's opinion "only

partially persuasive."  Id. at 29.

> In terms of social interaction, Dr. Kramer opined that
> [Plaintiff] has marked limitations interacting appropriately
> with the public.  The opinion also states that [Plaintiff] has
> moderate limitations interacting with supervisors and co-
> workers, as well as responding appropriately to usual work
> situations and to changes in routine work setting.  I find this
> opinion to be only partially persuasive, as there is not
> significant evidence in the medical record to support a finding
> of marked limitations in [Plaintiff's] ability to interact with
> the public.  Although [Plaintiff] has been described as having
> soft and quiet speech, she has routinely been described as
> cooperative during mental health examinations ([tr. at 428,
> 449, 460, 472, 476, 481]).  Moreover, she has repeated[ly]
> affirmed the ability to shop.  However, I have provided
> limitations to no more than superficial and incidental
> interaction with the public, as this is consistent with her
> current activities and her prior employment history as a store
> owner and packer.

Id. at 29.

In considering Dr. Kramer's assessment of Plaintiff's ability to interact with

others, the ALJ failed to acknowledge or consider evidence in the record supporting Dr.

Kramer's assessment.[19]  Dr. Desir, one of the doctors who treated Plaintiff at Merakey,

---

[19]In saying "there is not significant evidence in the medical record to support a
finding of marked limitations in [Plaintiff's] ability to interact with the public," I
understand the ALJ to be referring to the August and December 2020 opinions by the

found that Plaintiff was "seriously limited" in her ability to interact with the general

public. Tr. at 442.[20]  In describing her findings with respect to Plaintiff's limitations with

social interaction, the doctor noted, "As above, [patient] has PTSD[,] can become

irritable, isolative and anxious with her own children.  [Patient's] symptoms wax and

wane and never remain improved for a sustained period of time."  Id.  This assessment is

supported by the treatment notes from Merakey wherein Ms. Kilroy, Plaintiff's therapist,

repeatedly indicated that Plaintiff's MDD symptoms included isolation and conflicts with

family members, see, e.g., id. at 556 (11/6/19), 561 (11/20/19), 565 (12/4/19), 579

(2/5/20), 590 (6/17/21), 601 (8/2/21), and the psychiatrists' notes referred to Plaintiff's

isolationist tendencies and conflicts with family members.  See, e.g., id. at 450

(10/24/19), 465 (2/27/20), 471 (3/27/20).  Although the ALJ noted certain observations

on MSE from the Merakey notes, including Plaintiff's soft speech and cooperative nature,

she failed to acknowledge substantive notations in the treatment records evidencing more

significant limitations in social interaction.[21]

---

physicians who reviewed the record on initial review and reconsideration.  Tr. at 29; see
also id. at 106 (initial consideration finding moderate limitation in ability to interact with
the public), 126 (reconsideration same).  However, neither of these doctors had the
benefit of the March 2021 assessment completed by Plaintiff's treating mental health
provider, Dr. Desir, nor the Merakey treatment notes post-dating December 2020.

[20]As noted, supra n. 16, the definition of a "marked" limitation in Dr. Kramer's
assessment was "seriously limited."

[21]Plaintiff also complains that the ALJ ignored Dr. Kramer's findings regarding
memory deficits.  Doc. 8 at 13.  Specifically, Dr. Kramer noted that Plaintiff was able to
recall three out of three objects immediately, but could not recall any of the three after a
delay.  Tr. at 429.  Despite this notation in his evaluation, Dr. Kramer found that Plaintiff
had only mild limitation in the ability to understand and remember simple instructions,

Moreover, I conclude that the ALJ's consideration of Dr. Desir's assessment is flawed. As previously noted, Dr. Desir found that Plaintiff's abilities with respect to understanding and memory were limited, except that her ability to ask simple questions was unlimited; her concentration abilities were limited or seriously limited; and her social interaction abilities were primarily seriously limited. Tr. at 441-42. The ALJ found Dr. Desir's opinion "only marginally persuasive." Id. at 30.

> [T]he opinion is not supported by explanations or objective findings to support Dr. Desir's opinion. Additionally, the opinion is not consistent with [Plaintiff's] participation in mental health therapy or her longitudinal course of treatment. For instance, [Plaintiff] has not required higher levels of mental or behavioral health care other than her monthly psychiatric follow-ups and individual psychotherapy appointments. Furthermore, Dr. Desir's opinion is not consistent with references in the record to [Plaintiff] being "okay" and her improvement in her sleep and appetite. The opinion is also not consistent with [Plaintiff's] generally unremarkable mental status findings on examination but for observations of an abnormal mood and fair insight, judgment, concentration, and attention ([tr. at 445-606]). The decision is not consistent with the opinions of other mental health clinicians who reviewed the medical record or that of the consultative examiner. Lastly, the opinion is not consistent with [Plaintiff's] current level of functioning, interacting with her family, performing self-care, cooking, shopping, driving and performing light cleaning.

Id. at 30. Contrary to the ALJ's reasoning, Dr. Desir provided explanations for each category of abilities she was asked to review, with reference to the Merakey treatment

---

id. at 431, and the ALJ relied on Dr. Kramer's finding of a "mild" limitation in this area in determining Plaintiff's RFC. Id. at 29. I find no error in the ALJ's reliance on the doctor's assessment interpreting his own evaluation, which is also consistent with Dr. Desir's finding that Plaintiff was "limited" in this area, defined as "[s]ome mild limitation." Id. at 440, 441.

notes.  For example, when asked to describe "the medical/clinical findings to support" the assessment with respect to understanding and memory, Dr. Desir wrote,

> [Patient] has been struggling with PTSD and Depression for 6 years prior to working with writer in January 2020.  Despite medication adjustments, [patient's] nightmares persisted and negatively impacted [patient's] mood, sleep, concentration and appetite.  Despite making slight improvements, [patient] continues to be low functioning, spending much of her time in bed or not caring for herself much.  [Patient's] improvement also waxes and wanes and frequently declines after a short period of time.

Id. at 441.

Dr. Desir's explanation is consistent with the Merakey notes, which evidence frequent changes in medication, tr. at 457 (11/19/19 - start venlafaxine and Seroquel), 461 (1/30/20 – increase Seroquel add Cymbalta), 467 (2/27/20 – increase Cymbalta, discontinue Seroquel, add Prozasin), 473 (3/27/20 – increase Cymbalta and Prozasin), 478 (5/1/20 – discontinue Prazosin, increase Cymbalta, start Trazodone), 483 (6/3/20 – increase Trazodone), 538 (7/7/21 – add Remeron), frequent notations by the treating psychiatrists that Plaintiff's mental health problems were worsening, see, e.g., id. at 457 (11/19/19), 462 (1/30/20), 468 (2/27/20), 474 (3/27/20), even after a period of stability, id. at 514 (11/18/20), and include notations of active and passive suicidal ideation.  Id. at 459 (1/30/20), 465 (2/27/20).

To the extent the ALJ relies on the non-examining record reviewers, as previously noted, neither of the reviewers had the benefit of Dr. Desir's assessment nor the Merakey records that post-dated their assessments.  The ALJ also indicates that Dr. Desir's assessment is inconsistent with that of the consultative examiner, Dr. Kramer.  Tr. at 30.

20

However, review of the two doctors' assessments establishes significant overlap between the two.  For example, both found mild limitations in Plaintiff's ability to understand, remember, and carry out simple instructions.  Compare id. at 431 (Dr. Kramer) with id. at 440, 441 (Dr. Desir – "limited" is defined as "[s]ome mild limitation").  Moreover, as previously discussed, both doctors found Plaintiff's ability to interact with the public was seriously limited.  Id. at 432 (Dr. Kramer), 442 (Dr. Desir).

Because the ALJ failed to properly consider the mental health treatment evidence, specifically the consistency between the opinions of Drs. Kramer and Desir, and the opinions' consistency with the Merakey treatment notes, the case must be remanded for further consideration.

### 2.  Other Claims

Because I have determined that the case must be remanded for further consideration of the mental health treatment evidence, Plaintiff's remaining claims do not require significant discussion.  First, Plaintiff claims that the ALJ limited her cross-examination of the VE.  Doc. 8 at 4-11; Doc. 12 at 1-3.  Because reconsideration of the mental health treatment evidence will require the ALJ to revisit the RFC assessment, additional vocational evidence will be necessary, at which time Plaintiff's counsel may cross-examine the VE regarding the jobs identified by the VE.[22]

---

[22]Recent reporting suggests that the Social Security Administration has decided to eliminate all but a handful of obsolete unskilled jobs from its database effective July 1, 2024.  See, Lisa Rein, *Social Security to Jettison Obsolete Jobs Database*, Washington Post, June 24, 2024.  This action may address a line of questioning Plaintiff's counsel was trying to pursue at the prior administrative hearing.

Finally, Plaintiff argues that the ALJ and Appeals Council judges were not properly appointed, claiming that the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3346(a), authorizes the Commissioner or Acting Commissioner of Social Security to serve for only 210 days.  Doc. 8 at 15.  Defendant responds that then-Acting Commissioner Berryhill was properly serving under the FVRA at the time she ratified the appointments of ALJs and Appeals Council judges on July 16, 2018.  Doc. 11 at 17-27.[23]

In pressing this argument, Plaintiff relies on Brian T.D. v. Kijakazi, in which the court held that the ALJ who heard T.D.'s case lacked authority to render a decision because Nancy Berryhill was not properly serving as the Acting Commissioner when she ratified the appointment of ALJs and Appeals Council judges.  580 F. Supp.3d 615, 635-36 (D. Minn. 2022).  The district court reasoned that, pursuant to the FVRA, Acting Commissioner Berryhill was not authorized to serve beyond the 210-day limit and was well beyond that point when she ratified the appointments of the ALJs and Appeals Council judges.  Id. at 633-34.

On March 7, 2023, after Plaintiff had submitted her opening brief in this matter, the Eighth Circuit reversed Brian T.D., finding that Ms. Berryhill was properly serving as Acting Commissioner when she issued an order ratifying the appointments of ALJs and Appeals Council judges in July 2018.  Dahle v. Kijakazi, 62 F.4th 424 (8th Cir. 2023).[24]

---

[23]Because the same ALJ or Appeals Council judges may be involved in the case on remand, I will address this issue.

[24]The Eighth Circuit reasoned that "the FVRA authorizes an individual who has ceased serving [the 210-day term] under § 3346(a)(1) to begin serving again under § 3346(a)(2) once a nomination is sent to the Senate."  62 F.4th at 427.

Although the Third Circuit has not addressed the issue, the judges of the district courts of our circuit have uniformly adopted the reasoning of the Eighth Circuit and concluded that Ms. Berryhill was properly serving as the Acting Commissioner at the time she ratified the appointment of the ALJs and Appeals Council judges.  See Markwardt v. Kijakazi, Civ. No. 22-2355, 2024 WL 185291, at *8 n.8 (E.D. Pa. Jan. 17, 2024) (citing Ortiz-Rivera v. Kijakazi, Civ. No. 21-2134, 2023 WL 25353 (M.D. Pa. Jan. 3, 2023); Hernandez v. Kijakazi, Civ. No. 22-1556, 2022 WL 17751355 (D.N.J. Dec. 19, 2022); Bernadette  H. v. Comm'r of Soc. Sec., Civ. No. 21-20586, 2022 WL 17080743 (D.N.J. Nov. 18, 2022); Neale v. Kijakazi, Civ. No. 21-915, 2022 WL 6111689 (D. Del. Oct. 7, 2022)).  Guided by the reasoning of the Eighth Circuit and the weight of authority from the judges of this circuit, I agree that Ms. Berryhill was acting within her authority as the Acting Commissioner when she ratified the appointments of the ALJs and Appeals Council judges.

## IV.    CONCLUSION

The ALJ failed to properly consider the mental health treatment evidence, including the assessments of Plaintiff's treating psychiatrist, Dr. Desir, and the consultative mental health examiner, Dr. Kramer.  Because reconsideration of the mental health treatment evidence will require reconsideration of Plaintiff's RFC and additional vocational evidence, I need not address Plaintiff's claim regarding cross-examination of the VE at the prior hearing.  Plaintiff's challenge to the appointment of the ALJ and Appeals Council judges is meritless.

An appropriate Order follows.